**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ | ) |
| **CAPITOL SPECIALTY INSURANCE** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )          **CIVIL ACTION** |
| **v.** | ) |
| | )          **NO. 14-40086-TSH** |
| **PJD ENTERTAINMENT OF WORCESTER,** | ) |
| **INC. D/B/A CENTERFOLDS II, and KAILEE** | ) |
| **M. HIGGINS,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

<u>**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY**</u>
<u>**JUDGMENT (Docket No. 22) and DEFENDANT'S CROSS-MOTION FOR SUMMARY**</u>
<u>**JUDGMENT (Docket No. 27)**</u>

**September 1, 2015**

**HILLMAN, D.J.**

Plaintiff Capitol Specialty Insurance Corporation ("Capitol Specialty") seeks declarations regarding its obligations under an insurance policy issued to Defendant PJD Entertainment, d/b/a Centerfolds II ("Centerfolds"). This action arises out of an underlying personal injury lawsuit in Massachusetts Superior Court brought by Defendant Kailee Higgins ("Higgins") against Centerfolds. Capitol Specialty asserts that it is not obligated to defend and indemnify Centerfolds under the terms of the insurance policy. Centerfolds has filed counterclaims against Capitol Specialty for violations of M.G.L. c. 93A and 176D. The parties have cross-moved for summary judgment on two of Capitol Specialty's declaratory judgment claims. For the following reasons, Capitol Specialty's motion for summary judgment (Docket No. 22) is <u>***granted***</u> and Defendants' cross-motion for summary judgment (Docket No. 27) is <u>***denied***</u>.

1

**<u>Background</u>**

Kailee Higgins filed the underlying tort action in Massachusetts Superior Court in May 2013, asserting claims against Centerfolds for negligence and gross negligence. The state court complaint alleged that Higgins was working as a dancer at Centerfolds when management and staff served and encouraged her to consume excessive amounts of alcohol. *See* State Court Compl., Docket No. 25-1, ¶ 6. Higgins, then only twenty years old, became intoxicated and was obviously impaired when an employee of Centerfolds escorted Higgins to her vehicle. *Id.* at ¶¶ 7-9. Higgins drove away and, as a consequence of her intoxication, was involved in a violent motor vehicle accident. *Id.* at ¶¶ 11-13. She suffered severe injuries due to Centerfolds' service of alcohol and failure to take reasonable precautions to prevent her from driving. *Id.* at ¶¶ 6-16.

Higgins and Centerfolds have now resolved the state court action by way of an agreement for judgment in favor of Higgins in the amount of $7.5 million. Under the terms of the settlement, Higgins has agreed to hold Centerfolds harmless for all but $50,000 of the judgment. In return, Centerfolds has assigned all rights and claims it has against Capitol Specialty to Higgins. Higgins now seeks to collect on the judgment under the insurance policy issued to Centerfolds by Capitol Specialty.

At the time of the accident, Centerfolds was insured under a policy that provided two distinct coverages relevant to this dispute. The first coverage is contained in the "Liquor Liability Coverage Form" and provides up to $300,000 for losses sustained "by reason of the selling, serving or furnishing of any alcoholic beverage." *See* Liquor Liability Coverage Form, Docket No. 26-1, at 80. Capitol Specialty does not dispute that it is obligated to defend and indemnify Centerfolds under this provision. The second coverage is set forth in the "Commercial General Liability Coverage Form" ("CGL Coverage Form"), and provides up to $1 million in coverage.

*See* CGL Coverage Form, Docket No. 26-1, at 42, 49-64. By the terms of the CGL Coverage

Form, Capitol Specialty agrees to "pay those sums that the insured becomes legally obligated to

pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

*Id.* The coverage provided under the CGL Coverage Form is subject to a liquor liability

exclusion, which eliminates coverage for certain bodily injuries related to the insured's provision

of alcohol. *See id.* at 50. Specifically, the coverage does not apply to:

> c. "Bodily injury" or "property damage" for which any insured may be held liable by
> reason of:
>
> > (1) Causing or contributing to the intoxication of any person;
> >
> > (2) The furnishing of alcoholic beverages to a person under the legal drinking age
> > or under the influence of alcohol; or
> >
> > (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or
> > use of alcoholic beverages.

*Id.* The insurance policy issued to Centerfolds also includes a "Non-Pyramiding of

Limits" endorsement limiting the amount of coverage available to the highest applicable limit in

the event that multiple coverage forms are triggered. *See id.* at 67.

## Discussion

Capitol Specialty seeks summary judgment on Counts Five and Six of the Amended

Complaint, requesting declarations that (1) it is not obligated to defend or indemnify Centerfolds

under the CGL Coverage Form; and (2) the non-pyramiding of limits provision restricts coverage

to the highest single limit available under the policy. *See* Pl.'s Am. Compl., Docket No. 41, ¶¶

61-71.[1] Defendants admit that the non-pyramiding of limits provision restricts coverage to either

---

[1] The parties moved for summary judgment prior to the filing of Capitol Specialty's Amended Complaint.
The Amended Complaint includes seven counts for declaratory judgment; whereas the original Complaint contained
two. The pending motions for summary judgment are not affected or obviated by the additional claims raised in the
amended pleadings. Accordingly, the Court proceeds to a summary judgment decision on the issues of
indemnification and anti-pyramiding, which constitute Counts Five and Six of the Amended Complaint.

$1 million under the CGL Coverage Form, or $300,000 under the Liquor Liability Coverage

Form. *See* Defs.' Answer, Docket No. 42, ¶¶ 66-71. Consequently, the only question before this

Court is whether Capitol Specialty is obligated to defend and indemnify Centerfolds under the

terms of the CGL Coverage Form.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides that the court shall grant summary judgment

if the moving party shows, based on the materials in the record, "that there is no genuine issue as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). A factual dispute precludes summary judgment if it is both "genuine" and "material." *See

Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "genuine"

when the evidence is such that a reasonable factfinder could resolve the point in favor of the non-

moving party. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material"

when it might affect the outcome of the suit under the applicable law. *Id*.

The parties acknowledge that there are no disputed issues of material fact regarding

Capitol Specialty's declaratory judgment action, and that the coverage dispute is a matter of law

appropriate for resolution by summary judgment. *See Vermont Mut. Ins. Co. v. Zamsky*, 732 F.3d

37, 42 (1st Cir. 2013) (stating that "the interpretation of an insurance policy typically embodies a

question of law for the court"). "Summary judgment for an insurance company is proper 'when

the allegations in the underlying complaint lie expressly outside the policy coverage and its

purpose.'" *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 403 (1st Cir. 2009)

(citing *Ruggerio Ambulance Serv., Inc. v. National Grange Ins. Co.*, 430 Mass. 794, 724 N.E.2d

295, 298 (2000)). Thus, in order to determine whether Capitol Specialty is entitled to summary

judgment, the Court must compare the facts alleged in the underlying state court complaint with the insurance policy provisions. *Id.*

### Whether the liquor liability exclusion in the CGL Coverage Form precludes coverage for Higgins' underlying state court claims

Massachusetts law regarding the interpretation of insurance policies governs this diversity action. *See B&T Masonry Constr. Co., Inc. v. Pub. Serv. Mutual Ins. Co.*, 382 F.3d 36, 38 (1st Cir. 2004). Insurance policies in Massachusetts are construed in accordance with general principles of contract interpretation. *Id.* Terms are given their ordinary meaning, *see Finn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 452 Mass. 690, 695, 896 N.E.2d 1272 (2008), and courts "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *A.W. Chesterton Co. v. Massachusetts Insurers' Insolvency Fund*, 445 Mass. 502, 518, 838 N.E.2d 1237 (2005). Where, as here, the insured party shows a possibility that their claim falls within the coverage, the burden shifts to the insurer to show that an exclusionary provision applies. *See Essex Ins. Co.*, 562 F.3d at 404. "If free from ambiguity, an exclusionary clause, like all other provisions of an insurance contract, must be given its usual and ordinary meaning." *Hakim v. Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 281, 675 N.E.2d 1161 (1997). However, exclusions from coverage are strictly construed, and any ambiguity should be resolved in favor of the insured. *See id.* at 282; *see also Hazen Paper Co. v. U.S. Fidelity and Guar. Co.*, 407 Mass. 689, 700, 555 N.E.2d 576 (1990).

Capitol Specialty asserts that the allegations of the underlying complaint fall expressly within the liquor liability exclusion, and therefore coverage under the CGL Coverage Form is precluded. The Court agrees. The facts of the underlying complaint are straightforward. Higgins brought claims in state court against Centerfolds for negligence and gross negligence because Centerfolds allowed Higgins to drive home after serving her excessive amounts of alcohol during

her shift as a dancer. *See* State Court Compl., Docket No. 25-1, ¶¶ 4-16. Higgins claims that Centerfolds was negligent both in serving alcohol to Higgins, and in failing to prevent foreseeable harm by allowing Higgins to drive off the premises impaired.

The language of the liquor liability exclusion is similarly straightforward. Coverage does not apply to "bodily injury . . . for which any insured may be held liable by reason of: (1) [c]ausing or contributing to the intoxication of any person; (2) [t]he furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) [a]ny statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages." *See* CGL Coverage Form, Docket No. 26-1, at 50. The phrase "by reason of" is unambiguous; it "means 'because of,' and thus necessitates an analysis at least approximating a 'but-for' causation test." *Pacific Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584, 589 (1st Cir. 2004) (citing *United States v. Rosa-Ortiz*, 348 F.3d 33, 38 (1st Cir. 2003) and *Three Sons, Inc. v. Phoenix Ins. Co.*, 357 Mass. 271, 257 N.E.2d 774, 776 (1970)).

The question becomes, then, whether Centerfolds is liable because of conduct that appears in the exclusion. If so, coverage is precluded. In applying a but-for causation test, Massachusetts courts "inquire[] whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectionable underlying conduct." *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 457, 720 N.E.2d 813 (1999). Based on the allegations of the state court complaint, there is no question that Higgins' injuries had their genesis in Centerfolds' actions of serving and encouraging her to consume excessive amounts of alcohol. Without that conduct of Centerfolds' management and staff, Higgins would not have become intoxicated, she would not have driven home impaired, and she would not have suffered bodily injuries for which Centerfolds is liable. Therefore, coverage is precluded because Centerfolds' liability exists "by

reason of causing or contributing to the intoxication of" Higgins. *See Fuller v. First Fin. Ins. Co.*, 448 Mass. 1, 8, 858 N.E.2d 288 (2006) (finding that assault and battery exclusion applied to preclude coverage for injuries sustained during rape and kidnapping, because "without the underlying assault and battery, there would have been no personal injuries related to the rape and kidnapping") (internal quotations and alterations omitted).

Other federal courts have reached the same result under similar circumstances. For example, in *State Auto Mutual Insurance. Co. v. Lucchesi*, a sports bar sought coverage for an underlying lawsuit in which a patron alleged that the bar (1) negligently over-served the patron; and (2) violated its common-law duty to monitor the premises by allowing the drunk patron to leave the bar intoxicated. *See* 563 F. App'x 186, 188-189 (3d Cir. 2014). Invoking the same liquor liability exclusion at issue here, the insurer asserted that coverage was precluded. *Id.* at 189. The bar argued that the exclusion did not apply to the claim that the bar allowed the drunk patron to leave, because that claim was based on a failure to monitor—*not* the service of alcohol. *Id.* The district court disagreed, finding that the failure-to-monitor claim was "inextricably intertwined" with the service of alcohol. *Id.* The Third Circuit affirmed, emphasizing that the exclusion "applie[d] cleanly to the Complaint," and unambiguously precluded coverage for *all* claims arising from the patron's injury, because the injury was "one for which the [sports bar] 'may be held liable . . . by reason of' serving him too much alcohol." *Id.* at 190-91. *See also Neth. Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1180 (7th Cir. 2013) (finding same exclusionary language applied to negligence claims in underlying action because the negligence allegations were "not sufficiently independent from the allegations that Phusion caused or contributed to the intoxication of any person"); *Peerless Ins. Co. v. Disla*, 999 F. Supp. 261, 263

(D. Conn. 1998) (finding same exclusionary language was "clear and unambiguous," and applied to preclude coverage for underlying claim of negligent sale of alcohol).

The Court rejects Defendants' alternative interpretation. Like the patron in *State Auto*, Defendants claim that Higgins' injuries were not caused by the service of alcohol, but by the negligent failure to prevent impaired driving. Relying on the Massachusetts Supreme Judicial Court's ("SJC") decisions in *Three Sons Inc. v. The Phoenix Ins. Co.*, 357 Mass. 271, 257 N.E.2d 774 (1970), *Newell-Blais Post No. 443 v. Shelby Mut. Ins. Co.*, 396 Mass. 633, 487 N.E.2d 1371 (1986), and *Liquor Liab. Joint Underwriting Ass'n v. Hermitage Ins. Co.*, 419 Mass. 316, 644 N.E.2d 964 (1995), Defendants assert that the words "by reason of" must be construed narrowly, and require that the excluded conduct correspond with the precise theory of liability in the underlying action. Essentially, Defendants argue that because "negligent failure to prevent impaired driving" is not specifically enumerated in the exclusion, coverage is not precluded.

To be sure, this might be a different case if Higgins was intoxicated when she arrived at Centerfolds, did not drink while she was there, and Centerfolds allowed her to drive away while still obviously impaired. But those are not the facts of the underlying complaint, which alleges in unequivocal terms that Centerfolds is liable for its conduct in serving and encouraging Higgins to drink in excess. *See State Auto*, 563 F. App'x at 190 ("We must, however, accept as true the allegations of the Complaint, which do not describe that version of the events.").

Furthermore, Defendants misread the import of the cases they rely upon. The exclusion in *Three Sons* eliminated coverage for "liability imposed upon the insured . . . *by reason of any statute or ordinance* pertaining to the sale, gift, distribution or use of any alcoholic beverage." *Three Sons*, 357 Mass. at 273 (emphasis added). Because the exclusion "clearly import[ed] a direct causal relation between the fact of liability and the violation of a statute," the SJC found

that it only pertained to liability for statutory violations, and not the underlying common law

negligence action. *Id*. at 275; *see also Newell-Blais*, 396 Mass. at 636-37 (same). In *Hermitage*,

the SJC found ambiguous an exclusion that precluded coverage for an "[a]ssault and/or battery."

419 Mass. at 318, 320-22. Because such bare language was "susceptible of at least two rational

interpretations"—one that excluded a negligence claim against the insured establishment for

failing to protect a patron from an assault by another patron, and one that excluded only

intentional assaults by the establishment or its agents—the SJC construed the language in favor

of coverage. *Id.* at 322. In this case, however, the exclusion expressly encompasses a range of

conduct *broader* than mere statutory violations, and is written in unmistakable terms.

Consequently, unlike the exclusions in *Three Sons*, *Newell-Blais*, and *Hermitage*, the liquor

liability exclusion is broad and clear enough to exclude coverage for common law negligence

actions, so long as the insured's underlying conduct involves contributing to a person's

intoxication or furnishing alcohol to minors or others under the influence.

The cases relied upon by Defendants merely confirm what the Court has already stated:

"by reason of" requires a "direct causal relation" between Centerfolds' liability and Centerfolds'

excluded conduct. That causal relationship exists. Artful rephrasings of the precise tort theory

used in state court do not alter the fact that if Centerfolds had not served Higgins alcohol, the

accident would not have happened. Indeed, Centerfolds' duty of reasonable care to prevent

impaired driving only arose *because* they served Higgins excessive amounts of alcohol. Thus,

the *only* rational interpretation of the exclusionary language is that it excludes coverage for

Centerfolds' failure to prevent Higgins' impaired driving, because it was Centerfolds' act of

serving alcohol that "caused or contributed to" Higgins' impairment in the first place. *See*

*Phusion Projects*, 737 F.3d at 1180 (observing that the negligence claims of the underlying

actions "are nothing more than rephrasings, or artful pleadings that are not wholly independent from Phusion's furnishing of alcohol").

In sum, the Court is mindful of the principle that ambiguity in the language of an insurance policy "must be construed in favor of coverage." *Zamsky*, 732 F.3d at 41. However, the language of the liquor liability exclusion in Centerfolds' insurance policy is not ambiguous. The exclusion applies because there is a direct causal relationship between Centerfolds' liability and their conduct of "causing or contributing to the intoxication" of Higgins. Therefore, coverage is precluded. The Court will grant summary judgment on Capitol Specialty's declaratory judgment claims.

## Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment (Docket No. 22) is ***granted***. Defendants' cross-motion for summary judgment (Docket No. 27) is ***denied***. Summary judgment will enter on Counts Five and Six of Plaintiff's Amended Complaint.


SO ORDERED.


*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**